UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) Case No. 2:16-cr-20045-SLD-TSH-1 |
| | ) |
| JESSE GUARDIOLA, | ) |
| | ) |
| Defendant-Petitioner. | ) |

ORDER

Before the Court are Defendant-Petitioner Jesse Guardiola's *pro se* motion to vacate under 28 U.S.C. § 2255 ("Pro Se 2255 Motion"), ECF No. 65, counseled Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Amended Counseled 2255 Motion"), ECF No. 80, *pro se* motion for status, ECF No. 85, and counseled motion for a status conference, ECF No. 87. For the reasons that follow, the Amended Counseled 2255 Motion is DENIED, and the remaining motions are MOOT.

BACKGROUND

On June 8, 2016, Guardiola was indicted by a grand jury on five counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Indictment 1–3, ECF No. 1. Assistant Federal Public Defender ("AFPD") Elisabeth Pollock was appointed to represent him. *See* June 17, 2016 Min. Entry. On October 7, 2016, Guardiola pleaded guilty to the charges against him without a written plea agreement. *See* Oct. 7, 2016 Min. Entry.

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing. PSR, ECF No. 31. USPO listed the offense conduct as including selling the following five firearms to a confidential source: a Llama .380 caliber handgun, *id.* ¶ 14; two Norinco, Model SKS, 7.62 x 39 caliber firearms, *id.* ¶¶ 16, 17; a Hi Point,

1

Model JHP, .45 caliber handgun, *id.* ¶ 17; and a Colt, Model MKIV Series 80, Officers ACP, .45 caliber handgun, *id.* ¶ 18. USPO applied a four-level enhancement on the basis that the offense involved eight firearms (the five Guardiola sold and an additional three that Guardiola allegedly showed the confidential source, *id.* ¶ 12). *Id.* ¶ 26. USPO found Guardiola's total offense level to be 31, *id.* ¶ 35, and his criminal history category to be V, *id.* ¶ 48. As such, it found his Sentencing Guidelines range for imprisonment to be 168 to 210 months. *Id.* ¶ 80.[1] Guardiola faced a maximum term of imprisonment of ten years on each count. *Id.* ¶ 79 (citing 18 U.S.C. § 922(g)(1) and § 924(a)(2)).[2] Guardiola filed two related objections to the PSR based on the number of firearms involved in the offense. *Id.* at 20–21. He contended he should only be accountable for the five firearms he sold and possessed. *See id.*

The sentencing hearing was held on February 17, 2017 before Judge Colin Bruce. Feb. 17, 2017 Min. Entry. At the hearing, the Government stated that it agreed with the objections and that Guardiola should have only been subject to a two-level enhancement for the number of firearms (five) rather than a four-level enhancement. *See* Sentencing Hr'g Tr. 5:9–15, ECF No. 53; *id.* at 6:4–11. Accordingly, Judge Bruce found that Guardiola's total offense level was 29, so with a criminal history category of V, the Sentencing Guidelines range for imprisonment was 140 to 175 months. *Id.* at 8:16–22. The Government recommended a sentence within the Guidelines range. *Id.* at 11:1–5. Guardiola asked for a sentence below the Guidelines range. *Id.* at 18:24–25. He made no specific recommendation as to supervised release. *See id.* at 19:16

---

[1] The PSR erroneously states that because "the maximum term of imprisonment is 120 months, the guideline range is 120 months." PSR ¶ 80. Because Guardiola had five § 922(g)(1) convictions, he could have been sentenced to five consecutive 120-month terms of imprisonment, and the Guidelines range would not have been capped at 120 months, *see* U.S. Sent'g Guidelines Manual § 5G1.2 (U.S. Sent'g Comm'n 2016)). No one advocated for the position that the Guidelines range was capped at 120 months at the sentencing hearing. *See* Sentencing Hr'g Tr. 8:21–9:6, ECF No. 53.

[2] At the time Guardiola was sentenced, § 924(a)(2) provided: "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." *See* 18 U.S.C. § 924(a)(2) (effective Oct. 6, 2006 to Dec. 20, 2018).

("Give him as much supervised release as you want."). Judge Bruce sentenced Guardiola to a total of 140 months of imprisonment, *id.* at 27:23–28:5,[3] and three years of supervised release, *id.* at 29:19–23.

Guardiola appealed. Not. Appeal, ECF No. 38. AFPD Pollock withdrew and Courtney Lang was appointed to represent Guardiola on appeal. *See* Mar. 6, 2017 Seventh Cir. Order, ECF No. 41. Guardiola subsequently voluntarily dismissed his appeal. *See* May 8, 2017 Mandate, ECF No. 50 (indicating that the appeal was dismissed pursuant to Federal Rule of Appellate Procedure 42(b) and Seventh Circuit Rule 51(f), which both provide for voluntary dismissal by motion of the appellant).

In February 2020, Guardiola filed the Pro Se 2255 Motion, in which he argued that Judge Bruce violated 28 U.S.C. § 455 and his due process rights by failing to recuse from the case, Pro Se 2255 Mot. 6, and that his plea was involuntary because at the time of his plea, it was not required that he know he was unable to possess a firearm, *id.* at 6–10. The due process and § 455(a) claims are based on *ex parte* communications Judge Bruce had with the United States Attorney's Office for the Central District of Illinois ("USAO") which came to light in 2018. *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).

The case was reassigned to this Court on February 21, 2020. *See* Feb. 21, 2020 Text Order. The Court appointed counsel to represent Guardiola, Mar. 27, 2020 Text Order, and counsel filed the Amended Counseled 2255 Motion, mooting or withdrawing the Pro Se 2255

---

[3] This sentence consisted of 120 months on each count to be served concurrently, with 20 of the 120 months on counts 2 and 3 to be served concurrent to each other but consecutive to the initial 120 months. Sentencing Hr'g Tr. 28:1–5; Judgment 2, ECF No. 35.

Motion.[4]  In the Amended Counseled 2255 Motion, he asserts due process and § 455(a) claims based on Judge Bruce's *ex parte* communications.  Am. Counseled 2255 Mot. 1–2.  He also asserts that the Federal Public Defender's Office ("FPD") provided him with ineffective assistance of counsel by failing to include claims based on Judge Bruce's *ex parte* communications in his appeal and by failing to obtain agreements with the Government to toll the time for him to bring his claims.  *Id.* at 23–24.

The Government filed a response arguing that Guardiola cannot show that Judge Bruce was actually biased against him, that his "nonconstitutional appearance of bias claim is not a proper basis for relief in a § 2255 proceeding," that he waived his right to assert the appearance of bias claim by dismissing his appeal,[5] that he procedurally defaulted his appearance of bias claim by failing to raise it on appeal, and that the appearance of bias claim is untimely.[6]  Resp. 26–27, ECF No. 84.  It also argues that Guardiola's ineffective assistance of counsel claims are meritless and suggests that the Court does not have jurisdiction to consider this motion.  *See id.* at 27.

The Court ordered Guardiola to file a response addressing the Court's jurisdiction, *see* Jan. 31, 2023 Text Order, which he filed on February 13, 2023, Def.'s Resp. Jurisdiction, ECF No. 86.

---

[4] Though Guardiola stated in the Amended Counseled 2255 Motion that the counseled motion was "intended to supplement" the Pro Se 2255 Motion, Am. Counseled 2255 Motion 1, in a later filing he indicated that by filing the counseled motion, he was withdrawing the Pro Se 2255 Motion, Def.'s Resp. Jurisdiction 2–3, ECF No. 86.  Thus, the Court addresses only the claims in the Amended Counseled 2255 Motion.

[5] Though initially the Government previews this as an argument that Guardiola waived his right to bring all of his claims, Resp. 26–27, ECF No. 84, it in fact argues only that the appearance of bias claim is waived, *id.* at 49 ("By affirmatively waiving his rights to raise any points on appeal, petitioner waived his ability to assert in this proceeding any nonconstitutional issues, such as an argument that the judge should have recused himself based on his relationship with the U.S. Attorney's Office, that could have been raised on appeal." (quotation marks omitted)).

[6] The Government does not contest the timeliness of Guardiola's due process claim because a tolling agreement covers that claim.  Resp. 51 n.12.

## DISCUSSION

I. **Legal Standard**

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

II. **Analysis**

The Court first addresses the Government's jurisdiction argument as that applies to all of Guardiola's claims and then addresses each of Guardiola's claims and any defenses specific to those claims.

A. **Jurisdiction**

"A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" either

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). A district court lacks jurisdiction to consider a successive § 2255 motion unless the petitioner first obtains authorization from the court of appeals to file the motion. *See*

*Burton v. Stewart*, 549 U.S. 147, 152 (2007); *Phillips v. United States*, 668 F.3d 433, 436 (7th Cir. 2012).

Guardiola filed a petition for a writ of habeas corpus under 28 U.S.C § 2241 in late 2019 arguing that he was actually innocent of his § 922(g) convictions after the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *See* Pet. Writ Habeas Corpus 7,[7] *Guardiola v. Entzel*, No. 2:19-cv-02287-JBM (C.D. Ill.) (Doc. 1). In *Rehaif*, the Supreme Court held that, "in a prosecution under 18 U.S.C. § 922(g) and § 942(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200; *see United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020) (clarifying that *Rehaif* held only that the must prove knowledge of status, not knowledge that one's status prevents one from possessing a firearm). Guardiola was convicted and sentenced prior to the decision in *Rehaif*. Judge Joe Billy McDade denied the petition on the merits after "assu[ming], for the sake of argument," that Guardiola could proceed under § 2241. *Guardiola v. Entzel*, Case No. 2:19-cv-2287, 2020 WL 68584, at *2–3 (C.D. Ill. Jan. 7, 2020). He concluded that Guardiola was aware that he was a felon, so *Rehaif* offered him no relief. *Id.*

Courts sometimes treat motions filed by prisoners as motions under § 2255 even if they are not labeled as motions under § 2255. *See Castro v. United States*, 540 U.S. 375, 377 (2003). For example, the Seventh Circuit has explained that "a postconviction motion that is functionally, substantively, a motion under section 2255 (the federal prisoner's habeas corpus substitute) should be treated as such, even if labeled differently." *Henderson v. United States*, 264 F.3d 709, 710 (7th Cir. 2001). But the Supreme Court has held that a

---

[7] The Court refers to the page number in the lower right corner of the petition, though it notes there is no page one.

> court cannot . . . recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive" restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing.

*Castro*, 540 U.S. at 377. "Where these things are not done, a recharacterized motion will not count as a § 2255 motion for purposes of applying § 2255's 'second or successive' provision." *Id.*

The Government argues that Guardiola's § 2241 could have been construed as a § 2255 motion, Resp. 28–29, but that "[i]t is unclear from the record if [he] ever received" the required warning, *id.* at 30. It also argues that it would "subvert" the purpose of the rule requiring a warning to allow Guardiola to bring a § 2255 motion here. *Id.* at 30–31. Guardiola argues that there was "no indication that [he] was advised that his § 2241 Petition . . . would be viewed as a § 2255 Petition," so the instant motion should not be considered successive. Def.'s Resp. Jurisdiction 2–3.[8]

Nothing in the docket of the § 2241 petition indicates that Judge McDade recharacterized the petition as a § 2255 motion, let alone gave Guardiola the required warning and opportunity to withdraw or amend. Instead, Judge McDade ruled on the petition as a § 2241 petition. *See Guardiola*, 2020 WL 68584, at *2–3. If a motion that *is* recharacterized as a § 2255 motion but without the proper warnings cannot count as a § 2255 motion for purposes of the second or successive rule, then a motion for which the warnings were never given and that was never recharacterized cannot either. The Government's policy-based arguments do not persuade the Court otherwise. The Court has jurisdiction to consider Guardiola's motion.

---

[8] Guardiola also addresses whether his Amended Counseled 2255 Motion should be considered successive to the Pro Se 2255 Motion, *see* Def.'s Resp. Jurisdiction 2–3, but the Court does not understand the Government to have made this argument, so the Court will not address it.

B. **Due Process**

Guardiola's due process and § 455(a) claims are based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, more than a year after Guardiola was sentenced. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Id.* (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here. In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks

omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Guardiola relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically. *See* Am. Counseled 2255 Mot. 4–12, 14–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Guardiola points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him.

The Court thus finds that Guardiola has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

C.  **Section 455(a)**

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Government does not address whether

Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he violated § 455(a) by failing to recuse from Guardiola's case.[9] Instead, it argues that Guardiola waived or procedurally defaulted the claim, Resp. 49–51, that the claim is untimely, *id.* at 51–57, and that the claim does not warrant relief under § 2255, *id.* at 43–49.

### 1. Procedural Default and Waiver

The Government argues that in dismissing his appeal, Guardiola waived his right to "raise any points on appeal," and, accordingly, he "waived his ability to assert in this proceeding any nonconstitutional issues, such as an argument that the judge should have recused himself based on his relationship with the U.S. Attorney's Office, that could have been raised on appeal." *Id.* at 49 (quotation marks omitted). It also argues that Guardiola procedurally defaulted his appearance of bias claim as he did not raise it on appeal. *Id.* at 50. These appear to amount to the same argument: because he failed to raise a § 455(a) appearance of bias claim on appeal (and instead dismissed his appeal), Guardiola forfeited his ability to bring it on a motion under § 2255.

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis added). Anticipating an argument that "the *ex parte* emails had not been revealed at the time, and therefore [Guardiola] could not have raised such a claim in an appeal," the Government argues that "the emails had nothing to do with [Guardiola's] case, and [Guardiola] cannot excuse his own procedural failure by belatedly asserting misconduct in unrelated cases to bolster a claim he chose not to make." Resp. 51. But the Government provides no case law

---

[9] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

support for its argument that Guardiola cannot rely on these communications, which became public after his appeal, to excuse his default. Instead, it appears to be making an argument that the communications do not support Guardiola's claim. But that is better considered as an argument on the merits. The Court does not find that Guardiola procedurally defaulted or forfeited his ability to make this claim.

### 2. Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Guardiola acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve Guardiola's right to raise a claim based on Judge

Bruce's failure to recuse from his case. Am. Counseled 2255 Mot. 2–3.[10] The Government argues that "equitable tolling should not apply." *See* Resp. 54–57.

The time limits set forth in § 2255(f) are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Guardiola barely develops an argument that he has met both elements of this test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then

---

[10] The Court cannot ascertain whether Guardiola contends his motion is timely under § 2255(f)(2), (3), or (4). He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4). Am. Counseled 2255 Mot. 2. But he makes no argument that any of these provisions apply. Instead, he goes on to argue for equitable tolling, *id.* at 3, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)). In any case, the Court finds that Guardiola's motion is not timely under § 2255(f)(2), (3), or (4). Because Guardiola does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply. And because Guardiola does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply. The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Guardiola could have learned of Judge Bruce's improper communications. Resp. 52–53. The Court agrees, though the Court declines to rule on precisely when the § 2255(f)(4) limitations period began to run. The Government submitted as an exhibit to its response a letter from Patton to Guardiola dated November 26, 2018 informing him of the communications. *See* Patton Letter, Resp. Ex. B, ECF No. 84-2 at 3–4. At the latest, then, Guardiola should have been aware of the communications in late 2018. His Pro Se 2255 Motion was not filed until February 2020, which was more than a year later.

merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Am. Counseled 2255 Mot. 3 (quotation marks omitted). Guardiola does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653–54. Guardiola points to no facts—and cites no further cases—to support his argument that Patton's legal mistake would go beyond mere negligence and support a finding of extraordinary circumstances warranting equitable tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling."). Moreover, Guardiola merely states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake." Am. Counseled 2255 Mot. 3. But "mere conclusory allegations of diligence are insufficient." *Mayberry*, 904 F.3d at 531.

13

The Court concludes that Guardiola has failed to establish his entitlement to equitable tolling, so it finds his § 455(a) claim untimely.

### 3. Cognizability

Even if the Court found that the § 455(a) claim was timely, it would not warrant relief. Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346. The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[11]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[12] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of

---

[11] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[12] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[13]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality." It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

---

[13] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

15

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, Guardiola has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating

16

circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Guardiola's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)). Moreover, Guardiola was sentenced at the low end of his Guidelines range.

The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on

direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Here, Guardiola has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255, so it is denied.

### D. Ineffective Assistance of Counsel

Guardiola asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways. *See* Am. Counseled 2255 Mot. 23–24. First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's communications with the USAO] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 24. And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims. *Id.*

The Government makes a number of arguments against these claims, including that "[t]he distorting impact of hindsight weighs on [Guardiola's] claim"; that "he waived his appellate rights"; and that the FPD made a strategic decision to preserve actual bias claims and not appearance of bias claims. *See* Resp. 61–68. But it also identifies what the Court concludes are fatal deficiencies in Guardiola's claims. With respect to Guardiola's first claim, the FPD did not represent Guardiola on appeal, so it could not have provided constitutionally ineffective assistance to Guardiola with respect to his appeal. *See id.* at 61.[14] And with respect to his

---

[14] As Guardiola is represented by counsel, the Court need not liberally construe his motion. But even if the Court liberally construed this claim to be a claim that his appellate counsel provided ineffective assistance, the *ex parte* communications did not come to light until over a year after his appeal was dismissed. Counsel could not have been

18

second claim, Guardiola had no right to counsel beyond his direct appeal. *See id.* at 62; *Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)). Any deficient performance in obtaining tolling agreements for postconviction review could not constitute a Sixth Amendment violation.

### III. Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Guardiola has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Jesse Guardiola's *pro se* motion to vacate under 28 U.S.C. § 2255, ECF No. 65, *pro se* motion for status, ECF No. 85, and counseled motion for a status conference, ECF No. 87, are MOOT. The counseled Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 80, is DENIED. The Clerk is directed to enter judgment and close the accompanying civil case, 1:20-cv-01064-SLD.

---

ineffective for failing to raise an argument based on communications of which she was not aware. *See* Resp. 62 ("Moreover, it is disingenuous to suggest, with the distorting effect of hindsight, that counsel should have appealed and alleged bias in this context. At the moment he could have appealed, petitioner had just received a bottom-of-the-guideline sentence and the *ex parte* emails had not surfaced as yet.").

Entered this 27th day of March, 2023.

                                                s/ Sara Darrow
                                                SARA DARROW
                                      CHIEF UNITED STATES DISTRICT JUDGE